**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PEGGY E. FELICIANO,

                Plaintiff,

   v.                                   No. 06-CV-548
                                                    (DRH)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

**APPEARANCES:**                             **OF COUNSEL:**

PETER M. MARGOLIUS, ESQ.
Attorney for Plaintiff
7 Howard Street
Catskill, New York 12414

HON. GLENN T. SUDDABY                SIXTINA FERNANDEZ, ESQ.
United States Attorney for the            Special Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

      Plaintiff Peggy E. Feliciano ("Feliciano") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act. Feliciano moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 7, 8. For the reasons which follow, the Commissioner's decision is affirmed.

### I. Procedural History

On March 5, 2002, Feliciano filed an application for disability insurance benefits and supplemental security income pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 74-76, 253-57.[1]  Those applications were denied on May 16, 2002.  T. 30-36.  Feliciano requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Thomas P. Zolezzi on April 22, 2004.  T. 18, 37.  In a decision dated June 24, 2004, the ALJ held that Feliciano was not entitled to disability benefits or supplemental security income.  T. 26-28.  On July 2, 2004, Feliciano filed a request for review with the Appeals Council.  T. 12-14.  The Appeals Council denied Feliciano's request for review, thus making the ALJ's findings the final decision of the Commissioner.  T. 3-5.  This action followed.

### II. Contentions

Feliciano contends that the ALJ erred when he failed to clarify the responses of the vocational expert and failed to address properly Feliciano's psychological problems.  The Commissioner contends that there was substantial evidence to support the determination that Feliciano was not disabled.

### III. Facts

Feliciano is currently forty-nine years old and has a high school education.  T. 74, 106.  Feliciano previously worked as a bank teller, office manager, temporary agency

---

[1] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 6.

2

worker, bus driver, and mail clerk. T. 18, 101. Feliciano alleges that she became disabled on January 1, 2002 due to reflex sympathetic dystrophy, depression, arthritis, and right carpal tunnel syndrome. T. 19, 74, 100.

## IV. Standard of Review

### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003). In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without

> considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2003).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the

4

decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V. Discussion

### A. Medical Evidence

Feliciano alleges that she became disabled on January 1, 2002 due to reflex sympathetic dystrophy,[2] depression, arthritis, and right carpal tunnel syndrome. T. 19, 74, 100. On March 15, 2002, Feliciano was examined by Dr. Patrick Caulfield, who suggested a reflex sympathetic dystrophy diagnosis. T. 132-33. Dr. Caulfield noted that Feliciano exhibited a slowed gait and the neurological examination showed decreased reflexes on both the right upper and lower extremities. T. 132. Dr. Caulfield also referred Feliciano to Dr. Bruce Beesley for a neurological examination. T. 132, 202. On April 26, 2002, Dr. Beesley examined Feliciano and noted that he did not see clear evidence of reflex sympathic dystrophy. T. 202-04. Shortly thereafter, a head CT scan was performed on Feliciano which was unremarkable. T. 168.

---

[2] "[A] series of changes caused by the sympathetic nervous system, marked by pallor or rubor, pain, sweating, edema, or osteoporosis, following muscle sprain, bone fracture, or injury to nerves or blood vessels. . . ." Dorland's Illustrated Medical Dictionary 520-21 (28th ed. 1994).

5

On January 27, 2003, Feliciano again was examined by Dr. Beesley after complaining of weakness on her right side. T. 198. Dr. Beesley noted that he failed to find any equivocal evidence of nerve damage aside from findings suggestive of right carpal tunnel. T. 199. On March 19, 2003, Dr. Beesley saw Feliciano for a follow-up regarding her right arm and leg pain. T. 195. Dr. Beesley concluded that the only treatable neurologic he could find was carpal tunnel syndrome. Id. The possibility of physical therapy or surgery was discussed, but Feliciano was not interested in surgery and wanted time to consider physical therapy. Id. Shortly thereafter, Feliciano underwent an MRI of her brain. T. 169. A comparison was made to the April 2002 CT scan, but the MRI was unremarkable. Id.

On August 6, 2003, Feliciano again sought treatment from Dr. Beesley after experiencing significant neck pain. T. 228. Dr. Beesley concluded that Feliciano suffered from tendinitis of the left wrist and ordered an MRI to determine the source of her neck pain. T. 228-29. The MRI revealed degenerative changes of the mid-cervical spine with a broad base disk bulge at C6-7 which produced right lateral recess narrowing. T. 237. On March 10, 2004, Feliciano was referred to Dr. Jin Li for a neurological examination. T. 245. Dr. Li noted that Feliciano had multiple tender spots with depressed mood and that these symptoms were consistent with fibromyalgia.[3] T. 246.

---

[3] "Fibromyalgia" is "a common and chronic disorder characterized by widespread muscle pain, fatigue, and multiple tender points." See National Institute of Arthritis and Musculoskeletal and Skin Diseases, Questions and Answers about Fibromyalgia, at http:// www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm (quoted in Locher v. Unum Life Ins. Co. of Am., 389 F.3d 388, 291 n,.1 (2d Cir. 2004))..

**B. Vocational Expert**

Feliciano contends that the ALJ erred when he failed to discuss or clarify the responses the vocational expert gave to her attorney's questions. During his brief questioning of the vocational expert, Feliciano's attorney raised the issue of her ability to concentrate on a given task. T. 308-09. The vocational expert questioned Feliciano regarding the length of time she contended she could concentrate during one hour. T. 309. Feliciano testified that for every hour, she could only remain attentive and concentrate for "maybe ten minutes." Id. Based on Feliciano's subjective complaints regarding her concentration, the vocational expert concluded that an individual with her alleged degree of limitation could not perform any work. T. 309-10.

However, as Feliciano's attorney noted during his questioning of the vocational expert, there were no medical reports to support Feliciano's complaint of poor concentration. T. 308. Further, substantial evidence supports the ALJ's determination that Feliciano had only a moderate limitation in maintaining concentration, persistence, and pace. T. 22. Dr. Caulfield concluded that Feliciano retained "moderate normalcy in being able to carry out instructions . . . [and] maintain moderate attention." T. 140. Dr. Ike Boka concluded that Feliciano's ability to understand, carry out, and remember instructions was within normal range. T. 179. Dr. Li examined Feliciano and observed that she had "good attention, abstraction, language, and fund of knowledge." T. 246. Moreover, the ALJ's failure to discuss Feliciano's responses to the vocational expert's questions does not constitute reversible error because "'[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite

7

specific evidence does not indicate that it was not considered.'" <u>Barringer v. Comm'r of Soc. Sec.</u>, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (quoting <u>Craig v. Apfel</u>, 212 F.3d 433, 436 (8th Cir. 2000) (citation omitted)).

Accordingly, the Commissioner's determination in this regard was supported by substantial evidence and is affirmed.

### C. Psychological Disorder

Feliciano contends that the ALJ erred when he failed to clarify her psychological problems.

Here, the ALJ determined that Feliciano failed to meet the requirements of § 12.04. T. 22. In order to satisfy the elements of § 12.04, a plaintiff must demonstrate that his or her impairment satisfies the requirements of both §§ 12.04(A) and (B), or, alternatively, § 12.04(C). The ALJ concluded that as a result of her depression, Feliciano had no limitations in her daily living or maintaining social functioning. <u>Id.</u> The ALJ also concluded that Feliciano had a moderate limitation in maintaining concentration, persistence, and pace, but there was no evidence of any episodes of decompensation or deterioration in work or work-like settings. <u>Id.</u> Therefore, the ALJ found that Feliciano's depression did not meet or medically equal any of the listed impairments. T. 26.

In support of his conclusion, the ALJ discussed Dr. Caulfield's opinion regarding Feliciano's mental limitations. T. 23. The ALJ failed to afford Dr. Caulfield's opinion great weight because it was not supported by the documentary evidence as a whole. <u>Id.</u> Further, there was no evidence in the record that Feliciano required any ongoing therapy of any kind

for her psychological problems. Id. Moreover, the ALJ failed to afford great weight to Dr. Levett's findings because they were based on a single examination and failed to focus on Feliciano's psychological impairments. T. 24. Thus, there is substantial evidence in the record to support the ALJ's findings as to Feliciano's alleged psychological problems.

Accordingly, the Commissioner's determination in this regard is affirmed.

### VI. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that the decision denying disability and supplemental security income benefits be **AFFIRMED**, Feliciano's motion for a finding of disability (Docket No. 7) be **DENIED**, and the Commissioner's cross-motion (Docket No. 8) be **GRANTED**.

DATED: April 24, 2007
       Albany, New York

_David R. Homer_
United States Magistrate Judge